# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. EDCV 17-0462-DOC (SPx)                              Date: July 18, 2017

Title: MELISSA CUEVAS V. TOPCO ASSOCIATES, LLC

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Dwayne Roberts | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING DEFENDANT'S MOTION TO STAY [29]**

Before the Court is Defendant Topco Associates, LLC's ("Topco" or "Defendant") Motion to Dismiss Amended Class Action Complaint or, in the Alternative, Stay the Case ("Motion") (Dkt. 29). The Court finds this matter suitable for decision without oral argument. Fed. R. Civ. P. 78, Local Rule 7-15. Having considered the parties' arguments, the Court STAYS proceedings pending the FDA's determination of question presented by *Kelley v. WWF Operating Company*, No. 1:17-CV-117-LJO-BAM, 2017 WL 2445836 (E.D. Cal. June 6, 2017) of whether plant-based products are "imitation" of dairy milk under 21 C.F.R § 101.3(e).

## I.    Background

The Court adopts the facts as set out in the operative complaint, Plaintiff's First Amended Complaint ("FAC") (Dkt. 23).

Plaintiff Melissa Cuevas ("Plaintiff") brings this class action on behalf of herself and other people who purchased Full Circle Almondmilk beverages from Defendant Topco. FAC ¶ 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 17-0462-DOC (SPx)                         Date: July 18, 2017
                                                                                                             Page 2

Topco is a Delaware corporation. *Id.* ¶ 22. Topco markets, distributes, and sells Full Circle Almondmilk products in San Bernardino County and throughout the United States. *Id.* ¶ 23. Plaintiff contends that Topco engages in "false, misleading, and deceptive marketing practices" by leading customers to believe that Topco's Almondmilk beverages are "dairy milk alternative[s] that [are] nutritionally equivalent to dairy milk." *Id.* ¶ 2.

Plaintiff alleges that Topco advertises its Almondmilk beverages as containing levels of calcium equivalent to dairy milk on its website, stating "quality, calcium-rich milk does not come from cows alone." *Id.* ¶ 3. However, Full Circle Original Unsweetened Almondmilk contains 67% less calcium, "90% less protein, 85% less potassium, and 57% less magnesium than non-fat dairy milk." *Id.* ¶ 4. Further, according to the U.S. Department of Agriculture ("USDA") National Nutrient Database, Almondmilk beverages contain less vitamins and nutrients than dairy milk. *Id.* ¶ 4.

Plaintiff also alleges that Defendant fails to accurately label Almondmilk beverages as "imitation milk" as required by the Food and Drug Administration ("FDA"). *Id.* ¶ 5. The FDA requires substitute products to be labeled as "imitation" if there is any reduction of essential nutrients in a measurable amount from the product it is a substitute for. *Id.* Plaintiff contends that Almondmilk should be labeled as "imitation milk" because of the reduction of essential nutrients found in measurable amount in dairy milk. *Id.*

Plaintiff claims that consumers rely on Defendant's marketing, product advertisement, packaging, and labeling in deciding whether to purchase Almondmilk beverages. *Id.* ¶ 7. In purchasing Almondmilk, Plaintiff relied on the belief that Almondmilk beverages were "nutritionally superior to dairy milk and contained comparable amounts of the essential vitamins and nutrients contained in dairy milk." *Id.* ¶ 20.

Plaintiff alleges that had she known that Almondmilk beverages were nutritionally deficient compared to dairy milk, she "would have paid less for [the Almondmilk products] or purchased other milk substitutes that are nutritionally equivalent to milk." *Id.* ¶ 21.

## II.   Procedural History

On March 13, 2017, Plaintiff brought this action against Topco. In the FAC, Plaintiff alleges that Defendant violated (1) California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*; and (3)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 17-0462-DOC (SPx)                                                          Date: July 18, 2017
                                                                                                                                                       Page 3

California's False Advertising Law ("FAL"), California Business & Professions Code § 17500, *et seq*. FAC ¶¶ 63, 76–77, 86–88.

On June 7, 2017, Defendant filed the instant Motion (Dkt. 29). Plaintiff opposed on June 19, 2017 (Dkt. 31). Defendant replied on June 26, 2017 (Dkt. 32).

## III. Legal Standard

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 268 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. EDCV 17-0462-DOC (SPx)                                         Date: July 18, 2017
                                                                                                                                       Page 4

      For claims sounding in fraud, a complaint must be dismissed when a plaintiff fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see* Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff alleging such claims to "state with particularity the circumstances constituting fraud." *Id.* The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Further, if the plaintiff claims that a statement is false or misleading, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

      In other words, the plaintiff "must set forth an explanation as to why the statement or omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997). This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Neubronner*, 6 F.3d 666, 672 (9th Cir. 1993).

      **B.**      **Motion to Stay**

      "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). The decision of granting or denying a stay is within the discretion of the district court. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

      When considering whether to stay a case, courts weigh a series of competing interests, including (1) "the possible damage that may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted). "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 17-0462-DOC (SPx)                       Date: July 18, 2017
                                                                                                      Page 5

## IV. Discussion

Defendant argues that the Court should dismiss the case because (1) the term "Almondmilk" complies with the federal standard of including "the common or usual name of the food" pursuant to 21 U.S.C. § 343(i); (2) Almondmilk is not imitation cow's milk; and (3) a reasonable consumer would not have been misled by Full Circle's label and website. Mot. at 6–13.

### A. The Term "Almondmilk" and § 341(i)

Defendant first argues that using the term "milk" on product labels of plant-based alternatives to dairy milk is proper. *Id.* at 7. Defendant cites *Ang v. Whitewave Foods Company*, No. 13–cv–1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013), for the proposition that the name "Almondmilk" accurately describes the product and "clearly convey[s] the basic nature and content of the beverage[], while clearly distinguishing [the product] from milk derived from dairy cows." *Id.* at *4

Defendant also cites *Gitson v. Trader Joe's Co.*, No. 13–cv–01333, 2015 WL 9121232 (N.D. Cal. December 1, 2015), to support the argument that Defendant's use of the term "Almondmilk" does not mean that the product purports to be cow milk. Mot. at 8. In *Gitson*, the court held that the defendant had not, "by calling its products 'soymilk,' attempted to pass off those products" as dairy milk. *Gitson*, 2015 WL 9121232, at 2.

However, Plaintiff is not seeking to preclude Defendant from using the term milk in "Almondmilk." Instead, Plaintiff alleges that "Defendant's labels are false, misleading, and unlawful because [Almondmilk products] are . . . imitation of another food—milk—and nutritionally inferior to milk, and should therefore either bear the word 'imitation' or be fortified to in order to be nutritionally equivalent to milk." *See* Opp'n at 7.

Ultimately, Defendant's reliance on *Ang* and *Gitson* is misplaced because neither *Gitson* nor *Ang* addressed the issue of whether plant-based products are imitations of cow milk under 21 C.F.R. § 101.3(e). *Id.* Indeed, there is no controlling case on this issue and the FDA has not made any determination on this matter.

### B. Whether Almondmilk is Imitation Milk

Defendant next argues that Almondmilk is not imitating milk and that a reasonable consumer would not have been misled by the Almondmilk product label and its website. Mot. at 8–13. Citing *Ang* and *Gitson*, Defendant contends that Almond milk is a "separate and distinct product" like soy milk and coconut milk. *Id.* at 9. As stated above,

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. EDCV 17-0462-DOC (SPx) | Date: July 18, 2017 |
| | Page 6 |

these cases only address the standard identity of "milk" but did not resolve the issue of whether plant-based products are imitations of milk, and thus are not directly on point.

     Instead, the case at hand is analogous to *Kelley*, where the court stayed the suit and referred the issue of whether Silk Almondmilk beverages should be labeled "imitation" under 21 C.F.R. § 101.3(e) to the FDA. In *Kelley*, the plaintiff brought a class action on behalf of herself and others who bought Silk Almondmilk products from the defendant. *Kelley,* 2017 WL 2445836, at *1. Similarly to Plaintiff's claims in this case, the *Kelley* plaintiff's claims are based on allegations that Silk Almondmilk products are "(1) mislabeled, in violation of § 101.3(e), because they should be identified as 'imitation' dairy milk; and (2) the use of the term 'almondmilk' is misleading." *Id.* at *2.

     The *Kelley* court concluded that the courts were an inappropriate forum to determine "*in the first instance* whether almond milk 'substitutes for,' is 'nutritionally inferior' to, and 'resembles' dairy milk" such that it must be labeled "imitation" milk under § 101.3(e). *Id.* at *5. Rather, the court determined the issue is more properly resolved by the FDA, as the FDA has the requisite knowledge and expertise on food labeling and can "ensure uniformity in administration of the regulations." *Id.*

     Plaintiff argues that this case is the same as many other "unlawful and deceptive food labeling decisions issued by district courts." Opp'n at 9. Plaintiff cited *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015), and several district court cases for the proposition that district courts are competent to rule on false and misleading food labels. Opp'n at 9–10.

     However, as Plaintiff concedes in her opposition, Plaintiff's CLRA, FAL and UCL claims are predicated on 21 C.F.R. § 101.3(e). Opp'n at 9. As noted above, there are no Ninth Circuit cases deciding whether plant-based milk is a substitute to dairy milk and should therefore be labeled as "imitation" milk under § 101.3(e). The Court agrees with the *Kelley* court that the court "is not an appropriate forum to decide *in the first instance* whether Almondmilk" is a substitute to dairy milk. *Kelley,* 2017 WL 2445836, at *5.

     The FDA's determination on the issue raised by *Kelley* will have a substantial impact on this case, where the central issue is also whether Almondmilk is a milk substitute. Defendants seek a stay pending the outcome of *Kelley*. "The existence of another proceeding that may have a substantial impact on a pending case is a particularly compelling reason to grant a stay." *Stanley v. Novartis Pharms. Corp.*, No. CV 11-03191, 2012 U.S. Dist. LEXIS 61713, at *7 (C.D. Cal. April 13, 2012) (citing *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979)).

Courts weigh the following competing interests on whether to grant or deny a stay pending the FDA's findings in *Kelley*: (1) the possible damage which may result from granting of a stay; (2) the hardship or inequity a party may suffer in being required to go forward; and (3) the orderly course of justice measure in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

### C. Prejudice to Plaintiff if a Stay is Granted

Although Plaintiff contends that Defendant's Motion to Dismiss Plaintiff's UCL, FAL, and CLRA claims should be denied, Plaintiff does not argue that she will suffer prejudice if a stay is granted. The Ninth Circuit has held that "a stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims." *Levya*, 593 F.2d at 864. Plaintiff has not identified any ongoing injury that suggest that the resolution of her claims is urgent.

The Court cannot foresee how long it will take for the FDA to make a ruling in *Kelley*. But as the court in *Kelley* points out, on December 23, 2016, some members of Congress have called for the FDA to address the issue of whether Almondmilk products are imitations of dairy milk. *Kelley*, 2017 WL 2445836, at *5. Thus, the FDA is aware of the issue and there is no indication that the FDA has shown no interest in addressing the Almondmilk issue. *See id.* at *6. The court in *Kelley* also mentioned that "the FDA is currently considering whether to opine on a dispositive issue in th[e] case," suggesting that the FDA will issue a ruling, or decline to rule, in a reasonable time frame. *See id.*

Accordingly, in spite of the delay a stay would cause, the Court finds no evidence that granting a stay would prejudice Plaintiff.

Accordingly, the first factor weighs in favor of granting a stay.

### D. Prejudice to Defendant if a Stay is Denied

The Court should also consider the prejudice the Defendant may suffer in being required to move forward. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). Although Defendant requested a stay because the case at hand is similar to *Kelley*, Defendant does not assert that it will be prejudiced if the stay is denied. The only prejudice to Defendant appears to be the litigation cost and the hardship of defending this suit. The Ninth Circuit has ruled that "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Lockyer*, 398 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. EDCV 17-0462-DOC (SPx)                                                    Date: July 18, 2017
                                                                                                                        Page 8

at 1098 (internal quotations marks omitted). As such, the second factor does not weigh in favor of granting a stay.

### E.      The Orderly Course of Justice

The "district court possesses the inherent power to control its docket and promote efficient use of judicial resources." *Dependable Highway*, 498 F.3d at 1066 (citing *Landis*, 299 U.S. at 254). However, case management, on its own, "is not necessarily a sufficient ground to stay proceedings." *Id.* The orderly course of justice is measured in terms of "simplifying or complication of issues, proof, and questions of law which could be expected to result from a stay." *Id.* (citing *Landis*, 299 U.S. at 248, 254–55).

As the court in *Kelley* concluded, the issue of whether Almondmilk should be deemed "imitation" milk under § 101.3(e) "involved technical questions of fact uniquely within the expertise and experience of agency." *Kelley,* 2017 WL 2445836, at *5 (citing *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304 (1976)). Because the FDA has not officially considered this issue and the Court's ruling can impair the uniformity of the FDA's regulation of food labels, the Court finds it would serve the interest of justice to stay this case pending the FDA's resolution of the *Kelley* referral.

Accordingly, the third factor weighs in favor of granting a stay, and because two of the three factors weigh in favour of a stay, the Court will STAY this case.

### V.      Disposition

The Court GRANTS Defendant's alternative Motion to Stay and STAYS this case pending the FDA's resolution of the *Kelley* referral. All dates in this case are VACATED.

The parties are ORDERED to provide the Court with a status reports **every ninety (90) days** outlining any developments in the FDA's evaluation of the *Kelley* referral and any progress the FDA makes toward resolving whether Almondmilk is imitation milk. The parties are further ORDERED to provide the Court with a status report **within fourteen (14)** days of the FDA's resolution of the *Kelley* referral.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                                                    Initials of Deputy Clerk
CIVIL-GEN